Roe, *cas. ejec.*, etc., *vs.* Doe, *ex dem.*, etc. ·

Roe, *cas. ejec.*, and John Pollard, tenant, plaintiff in error, *vs.* Doe, *ex dem.*, of E. B. Tait, ex'r, etc., defendant in error.

1. An adverse possession of real estate, under written evidence of title, from the 5th of November, 1856, until the 24th of September, 1867, gives a good title against all persons not under disability to sue.
2. Since the 1st of January, 1863, the time when the Code went into operation, there has not been any statute of limitations in this State, as to suits for real property. An actual adverse possession, under written evidence of title, for seven years, gives a good prescriptive right, as against all persons not under disability to sue.
3. The Ordinance of the Convention of 1865, declaratory of the suspension of the statutes of limitations since the 19th of January, 1861, and enacting that they should continue suspended until civil government should be fully restored, inasmuch as it creates *no disability* to sue, did not operate so as to prevent the ripening of a prescriptive title under the Code, so far as that title is dependent on a possession since the 1st of January, 1863.
4. A party setting up a prescriptive right under the Code, may tack to his possession, since the 1st of January, 1863, a possession, good before that time, as part of a defense under the statute of limitations, if his possession has been continuous.
5. When a new lessor of the plaintiff is introduced, by way of amendment to an action of ejectment, the case, as to that demise, is to be tried as though the action had not been commenced until the date of the amendment.

Ejectment. Statute of Limitations. Prescription. Decided by Judge Worrill. Chattahoochee Superior Court. September Term, 1868.

In 1860, ejectment was brought by John Doe, upon the demise of Rolly Hopper against Richard Roe, casual ejector, and John Pollard, tenant in possession. On the 24th of September, 1867, the declaration was amended by laying a new demise in the name of Edmond B. Tait, as executor of the last will and testament of Rolly Hopper, deceased. The defence was the statute of limitations. The plaintiff's attorney read, in evidence, the plat and grant of the premises in dispute, from the State of Georgia to Rolly Hopper, dated 24th of December, 1836, and the letters testamentary of said Tait as such executor, dated in 1857. He then

examined, as a witness, the tenant, who stated that he had been in possession of said premises ever since the 5th of November, 1856; that he bought the lot from one Seymour R. Bonner, paying him therefor $150 00, in good current bank bills; that he made the purchase in good faith, believing Bonner had a good title, immediately took possession, and had held peaceable and quiet possession, in good faith, ever since; had cleared part of the land, built a house, etc· (There was some testimony as to mesne profits, etc., but the same is unnecessary here).

The plaintiff closed. The defendant's attorney read, in evidence, a deed from said Bonner to said Pollard, dated the 5th of November, 1856, and closed.

The Court charged the jury that the statutory bar had not attached, for as much as the Convention of 1865, on the 31st of October, 1865, passed an Ordinance enacting that the statute of limitations, in all civil and criminal cases, was, and had been, suspended, from the nineteenth day of January, 1861, and that, although the Legislature did not stop the running of the statute of limitations until the 14th of December, 1861, still it was competent for the Convention to declare said statute suspended from said 19th of January, 1861.

The jury found for the plaintiff. Defendant's attorneys say said charge was erroneous.

WILLIAMS & THORNTON, M. H. BLANFORD, (represented by Judge Rich. H. CLARK,) for plaintiff in error, said: There can be no recovery by a dead man. 24 *Ga. R.*, 494; 29 *Ga. R.*, 45. A new demise is a new action. 30 *Ga. R.*, 873. The war ended when hostilities ended. *Armstrong vs. Jones*, 34 *Ga. R.*, 312. The suspension was not till 14th December, 1851. The recital to the contrary, by the Ordinance of 1865, does not bind the courts. As to retroactive statutes, they cited: 1st. Kent's Com. 455-6, and note. Constitution of 1868, art. 2, sec. 5. *Dougherty vs. Bethune*, 7 *Ga. R.*, 90-92; *Searcy vs. Stubbs*, 12 *Ga. R.*, 439, and

Roe, *cas. ejec.*, etc., *vs.* Roe, *ex dem.*, etc.

cases cited, particularly 4 Wheat. R., 200 and 207 ; 12 Wheat. R., 378.

PEABODY & BRANNON for defendant in error.

McCAY, J.

This was action originally brought in 1860, in the name of John Doe, *ex dem.*, Rolly Hopper vs. Richard Roe and John Pollard, tenant-in-possession.   On the trial, plaintiff introduced letters testamentary to one Edmund B. Tait, on the estate of Rolly Hopper, dated in 1857.   As this showed Rolly Hopper to have been dead at the commencement of the suit, the plaintiff, on the trial, 24th September, 1867, added a new demise, in the name of Tait, executor.

Defendant proved possession ever since the 5th of November, 1857, under a written deed from one Bonner, and relied upon his statutory title.   The grant was to Rolly Hopper. The Court charged the jury that the several Acts, (1860–1865), suspending the statute of limitations, prevented the attaching of the statutory bar, and there was a verdict for the plaintiff.   There was no question made in the case, as to whether Rolly Hopper was or was not dead at the time of defendant's taking possession.   By the facts in this record, it appears that the defendant went into the possession of the premises in dispute, on the 5th of November, 1856, and has continued in possession ever since.   It further appears that he claimed the land in his own right, and under "written evidence of title."   Clearly, his title is good, unless, by reason of the various Acts, suspending the statute of limitations, he is prevented from taking advantage of his adverse possession, under written evidence of title, for seven years.   We have decided, at this term, that the statutes of limitations were suspended during the war, and up to the restoration of civil government, by various Acts on the subject.   We do not think, however, that this suspension can operate in this case, to defeat the defendant.

2.   By the Code of Georgia, which went into operation on

the 1st of January, 1863, the whole *theory* of the law, upon the effect of a statutory possession, is altered.    There is, in the Code, no statute of limitations, fixing a period within which actions shall be brought for the recovery of real or personal property.

The object of such statutes, to-wit : the protection of a *bona fide* possession, under claim of right, is attained by providing that adverse possession of lands, under written evidence of title for seven years, and adverse possession of personal property for four years, *shall give a title by prescription.*    Secs. 2641, 2643.

Section 2644 provides that "No prescription works against the rights of a minor during infancy, of a married woman during coverture, etc., and section 2645, has a general provision, that a prescription commenced, shall cease against persons under *disability*, pending the *disability.*    By other sections of the Code, under this same title of prescription, there is a careful accommodation of this new doctrine to the various exigencies of society, so as to prevent injustice.    It is, however, perfectly apparent that it was the intent of the compilers of the Code to drop altogether the statute of limitations of suits for the recovery of real or personal property.

It follows, therefore, that since the 1st of January, 1863, there has existed, in Georgia, no statute of limitations as to suits for realty.    The Acts suspending " The Statute of Limitations" do not apply to actions of ejectment after the 1st of January, 1863, since, after that date, we had no such statutes applying to such actions.

3. So far, therefore, as the rights of this defendant depend upon a possession since the 1st of January, 1863, the suspensions of the statute of limitations do not affect him ; they create no disability to sue, and, as we understand the Code upon this subject, the whole period, from the 1st of January, 1863, till the bringing of this suit, is to be counted in favor of the defendant.

4. We are of opinion, also, that the defendant may tack to his possession, since the 1st of January, 1863, any previous possession, which would have been a good defense under

the statute of limitations.    It·certainly was not the intent of the Legislature, by this charge, in the theory of the law, to deprive a party in possession of any right he had already acquired.    The possession, in this case, had begun in November, 1857, and at the suspension of the statutes, on the 14th of December, 1861, he had an adverse possession of over four years.

From the 14th of December, 1861, to the 1st of January, 1863, the statutes were suspended.    But after the 1st of January, 1863, there was, as to realty, no statute of limitations. The law of prescription then went into operation, and has continued since.    Looking to the object of such laws, we cannot suppose that the Legislature could have intended that possessions which had been running and ripening into title before the 1st of January, 1863, should be lost, and we, therefore, conclude that persons in possession adversely under written evidence of title, on the 1st of January, 1863, started under the new law, with whatever of right they had already acquired under the statute of limitations.    And they may tack to their possession, since the 1st of January, 1863, any possession previously to that time, which might have been counted under the plea of the statute.

5. Under our liberal laws upon the subject of amendments, we see no objection to the introduction, at any time before trial, of a new lessor of the plaintiff in an action of ejectment.    But, as to him, it makes essentially a new suit. It may be that he has no connection, at all, with the previous parties; at any rate, this Court, in the case of *Roe et al. vs. Doe et al*, 30 *Ga. R.*, 873, has decided that the titles of the several lessors are different causes of action, and, for purposes of defense, the action, as to each one of them, is to be considered as commenced when that one is introduced into the declaration.    This amendment was made September, 1867, and, therefore, up to that time, the defendant, as to that lessor, was in adverse possession.

We think, for these reasons, the Court below was in error, and that a new trial ought to be had.